**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DEBORAH GUERRIERE,**
o/b/o **S.D.M.,**

                        Plaintiff,                      1:13-cv-1174
                                                                      (GLS)

           v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                        Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter M. Margolius | PETER M. MARGOLIUS, ESQ. |
| 7 Howard Street | |
| Catskill, NY 12414 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ANDREEA L. LECHLEITNER |
| United States Attorney | DAVID L. BROWN |
| 100 South Clinton Street | FERGUS J. KAISER |
| Syracuse, NY 13261 | Special Assistant U.S. Attorneys |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Deborah Guerriere o/b/o S.D.M. challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g).[1] (Am. Compl., Dkt. No. 4.) After reviewing the administrative record and carefully considering Guerriere's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On March 23, 2011, Guerriere filed an application for SSI under the Social Security Act ("the Act") on behalf of her son, a minor, alleging disability since January 1, 2010. (Tr.[2] at 59, 108-14.) After her application was denied, (*id.* at 60-65), Guerriere requested a hearing before an Administrative Law Judge (ALJ), which was held on May 8, 2012, (*id.* at 36-58, 69-72). On June 8, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's

---

[1] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 11.)

2

denial of review. (*Id.* at 1-6, 15-35.)

Guerriere commenced the present action by filing her amended complaint on September 24, 2013 wherein she sought review of the Commissioner's determination. (Am. Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 11.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 13, 18.)

### III. Contentions

Guerriere contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 13 at 3-5.) Specifically, Guerriere claims that the ALJ erred in finding that S.D.M.'s impairments are not functionally equivalent to a listed impairment. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 18 at 6-11.)

### IV. Facts

The court incorporates the factual recitations of the parties and the ALJ. (*See generally* Dkt. No. 13; Dkt. No. 18; Tr. at 21-29.)

### V. Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of eighteen are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI. Discussion

### A. Functional Equivalency

Where a severe impairment or combination of impairments exists, the final inquiry is whether the child's impairment or combination of impairments "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). A finding of functional equivalence requires "marked" limitations in two, or an "extreme" limitation[3] in one, of the

---

[3] A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain, while an "extreme" limitation "interferes very seriously" with those abilities. 20 C.F.R. § 416.926a(e)(2)(i), (3)(i).

4

following six "domains": "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and, (vi) [h]ealth and physical well-being." *Id.* § 416.926a(a), (b)(1)(i)-(vi). Here, the ALJ found that S.D.M. suffers attention deficit hyperactivity disorder and conduct disorder which cause a marked limitation in the domain interacting and relating with others, and no limitation or a "less than marked" limitation in the remaining five domains. (Tr. at 25-29.) Guerriere contends that the ALJ erred in finding that S.D.M. does not have a marked limitation in the domain caring for yourself. (Dkt. No. 13 at 3-5.) As the Commissioner argues, however, the ALJ's functional equivalency analysis is supported by substantial evidence, and, thus, it will not be disturbed. (Dkt. No. 18 at 6-11.)

The domain caring for yourself contemplates a child's ability to "respond to changes in [their] emotions and the daily demands of [their] environment to help [themselves] and cooperate with others in taking care of [their] personal needs, health and safety. It is characterized by a sense of independence and competence." 20 C.F.R. § 416.926a(k)(1)(i). The regulations instruct that adolescents

5

>     should feel more independent from others and should
>     be increasingly independent in all of [their] day-to-day
>     activities. [They] may sometimes experience
>     confusion in the way [they] feel about [themselves].
>     [They] should begin to notice significant changes in
>     [their] body's development, and this can result in
>     anxiety or worrying about [themselves] and [their]
>     body. Sometimes these worries can make [them] feel
>     angry or frustrated. [They] should begin to discover
>     appropriate ways to express [their] feelings, both
>     good and bad (e.g., keeping a diary to sort out angry
>     feelings or listening to music to calm [themselves]
>     down). [They] should begin to think seriously about
>     [their] future plans, and what [they] will do when [they]
>     finish school.

*Id*. § 416.926a(k)(2)(v).

The ALJ concluded that S.D.M. has a less than marked limitation in this domain because, although he needs occasional reminders, he independently dresses and eats, has hobbies and interests, and is generally age appropriate. (Tr. at 28-29.) Guerriere argues that this determination was in error because school and medical records show that S.D.M. is disruptive and acts out in class, has been classified as suffering an emotional disturbance by the committee on special education, has difficulty following rules at home and school, does not care for his personal hygiene, help around the house, or take his medications, and his eighth grade teacher opined that S.D.M. suffers "serious" and "obvious" problems

6

in this domain. (Dkt. No. 13 at 3-5.)

Importantly, "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted). Stated another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

Here, the ALJ reasonably concluded that S.D.M.'s symptoms respond to medical treatment and are not so severe as to be disabling. (Tr. at 23.) In particular, Global Assessment of Functioning (GAF) scores

7

throughout the relevant time period indicate moderate to mild symptoms.[4] (*Id.* at 363, 377-78.) S.D.M.'s treatment providers repeatedly noted that his symptoms are worse during the school year when he is under increased stress, and wane in the summer months so that his medications can be reduced. (*Id.* at 24, 364, 386, 389.) Mental status examination results of record are largely unremarkable, with treatment providers regularly noting that S.D.M. was neatly dressed and well-groomed, cooperative and interested, with a euthymic mood and appropriate affect, good eye contact, logical, coherent, and goal directed speech, intact memory, normal psychomotor activity, and impulse control characterized as "reflective and able to resist urges." (*Id.* at 364, 380, 384, 386.)[5] During a consultative examination by psychologist Alan Dubro, it was reported that S.D.M. dresses himself and maintains his hygiene independently and on a daily basis. (*Id.* at 337.) Dr. Dubro also noted that S.D.M. performs household

---

[4] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008). A score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Id.* at 262 (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)). From May 2011 through January 2012, S.D.M.'s GAF scores were noted to be in the range of fifty-five to seventy. (Tr. at 363, 377-78.)

[5] Although, on one occasion, it was noted that S.D.M. was "a bit dirty." (Tr. at 366.)

chores, but refuses to do so when he is upset or angry. (*Id.*) On S.D.M.'s most recent visit to Green County Mental Health Center, in January 2012, Guerriere reported that S.D.M. was doing well at home and school with the help of his medications, which caused no side effects. (*Id.* at 383.) Thereafter, in February 2012, S.D.M. was discharged from Greene County Mental Health Center to the care of his primary care physician because he no longer needed specialist attention for his psychiatric condition. (*Id.* at 389.) After reviewing the evidence of record, psychological consultant J. Dambrocia opined that S.D.M. suffers less than marked limitations in the domain caring for himself. (*Id.* at 354-59.)

In addition to the above medical evidence, the ALJ considered S.D.M.'s school records. (*Id.* at 24.) In March 2012, S.D.M.'s eighth grade teacher opined that, in ten subsets of this domain, S.D.M. suffered a "serious problem" in two areas, an "obvious problem" in one area, and "no problem" or only "a slight problem" in the remaining seven areas. (*Id.* at 199.) Specifically, S.D.M.'s teacher reported that he suffered a serious problem handling his frustration appropriately and responding to changes in his own mood, an obvious problem being patient, a slight problem, among other things, caring for his personal hygiene and using appropriate

9

coping skills, and no problem caring for his physical needs and being responsible for taking needed medications. (*Id.*) According to his most recent individualized education program, S.D.M. works well in a small group or one-on-one setting and with adults that show him respect and whom he respects. (*Id.* at 394-401.) He needs gentle reminders to remain appropriate in social interactions, and needs to continue working on following classroom rules. (*Id.* at 395.) S.D.M. is to continue receiving special education services. (*Id.* at 398-401.)

Based on the foregoing, the ALJ's conclusion that S.D.M. experiences deficits in the domain of caring for yourself, but that such deficits do not reach the marked level, is supported by substantial evidence. (*Id.* at 28-29.)

**B.     Remaining Findings and Conclusions.**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Guerriere's amended complaint (Dkt. No. 4) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 19, 2015
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court